[This opinion has been published in *Ohio Official Reports* at 73 St.3d 130.]

SIMPSON, EXR., APPELLANT, *v.* BIG BEAR STORES COMPANY, APPELLEE, ET AL.

[Cite as *Simpson v. Big Bear Stores Co.*, 1995-Ohio-203.]

*Torts—Business owner's duty to warn or protect its business invitees from criminal acts of third parties does not extend to premises not in possession and control of the business owner.*

A business owner has a duty to warn or protect its business invitees from criminal acts of third parties when the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner. The duty does not extend to premises not in the possession and control of the business owner.

(No. 94-517—Submitted April 18, 1995—Decided August 16, 1995.)

APPEAL from the Court of Appeals for Franklin County, No. 93AP-852.

———————————

{¶ 1} On July 5, 1991, Mary E. Falkenberg was physically attacked after she left the Big Bear supermarket at Graceland Shopping Center. Her purse was stolen and she was thrown to the ground, striking her head against the exterior wall of the supermarket. She was about to load her groceries into her car, which was parked immediately to the west of the Big Bear store, when the attack occurred. Her assailant was never found. Plaintiff maintains that this is not the first mugging to occur in the west parking lot and that Big Bear was aware of at least five other incidents that had occurred in the same area where Falkenberg was robbed. Big Bear disputes this figure, but given the procedural posture of this action we must construe the evidence in favor of plaintiff.

{¶ 2} Graceland is a fifty-three-acre, eighty-store shopping center located in the city of Columbus near the intersection of High Street and Morse Road. The shopping center is owned and operated by Graceland Shoppers Limited

Partnership. The relationship between Graceland Shoppers and Big Bear is governed by a written lease. Article 9 addresses responsibility for common areas, including parking lots.

{¶ 3} Falkenberg filed suit against appellee Big Bear and Graceland Shoppers Limited Partnership. Her complaint alleged inadequate security and failure to warn. After suit was filed Falkenberg died and Brucia Simpson, executor of Falkenberg's estate, was substituted as plaintiff, and an amended complaint was filed that included a count for wrongful death.

{¶ 4} Thereafter, both Big Bear and Graceland filed motions for summary judgment. The trial court sustained both motions. The court of appeals affirmed summary judgment for Big Bear but reversed as to Graceland. Graceland is not a party to this appeal and, therefore, only those issues pertaining to Big Bear are before this court.

{¶ 5} This cause is now before the court upon the allowance of a discretionary appeal.

———————————

*Clark, Perdue, Roberts & Scott Co., L.P.A.,* and *Edward L. Clark*, for appellant.

*Lane, Alton & Horst, Karen K. Rosenberg* and *Theodore M. Munsell*; *Berlon & Timmel* and *Michael J. McLane,* for appellee.

*Allen Schulman & Associates* and *Allen Schulman, Jr.*, urging reversal for *amicus curiae*, Ohio Academy of Trial Lawyers.

———————————

**MOYER, C.J.**

{¶ 6} The issue presented is whether a business owner's duty to provide a safe environment for its invitees may extend to criminal acts of third parties occurring in an area adjacent to the business premises, but not under the control of the business owner. Plaintiff argues that this court should expressly adopt 2

2

Restatement of the Law 2d, Torts (1965), Section 344, which addresses the liability of a business owner for acts of third parties on premises under the control of a business owner and then extends liability to areas adjacent to the business premises, but not under the control of the business owner. Plaintiff contends that an exception to the requirement of possession and control should be made in circumstances where the owner knows or should know of criminal activity occurring near the business premises that endangers the safety of invitees.

{¶ 7} 2 Restatement of the Law 2d, Torts (1965) 223-224, Section 344 provides:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentional harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

"(a) discover that such acts are being done or are likely to be done, or

"(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

{¶ 8} This court has twice addressed Section 344 of the Restatement. The first case, *Holdshoe v. Whinery* (1968), 14 Ohio St. 2d 134, 43 O.O. 2d 240, 273 N.E. 2d 127, involved injuries sustained by an invitee when a car rolled down an embankment and struck the plaintiff as she was picnicking. This court affirmed the judgment of the court of appeals reversing a directed verdict for the defendant. Paragraph four of the syllabus provides: "Such an owner and occupier of land breaches his duty to invitees who are injured by the negligent acts of third persons, where such owner and occupier fails to exercise reasonable care to discover that such negligent acts of third persons are being done or are likely to be done and fails to give a warning adequate to enable such invitees to avoid harm, or fails to act to protect such invitees against such negligent acts of third parties." We remanded,

holding that the risk of a car rolling down the embankment was foreseeable, since the owner had provided no level parking, nor had he taken steps, such as providing parking blocks, to ensure that cars would not roll.

{¶ 9} We addressed Section 344 again the following year in *Howard v. Rogers* (1969), 19 Ohio St. 2d 42, 48 O.O. 2d 52, 249 N. E. 2d 804. Howard was injured in a fight that occurred during a for-profit dance held at a junior high school. Howard brought suit under a theory of inadequate security and was awarded damages by a jury. We affirmed the reversal by the court of appeals and held that a directed verdict should have been entered for the defendant. We again based our decision on the forseeability of the injury and held that absent evidence that the defendants knew or should have known of the danger that a fight could take place, judgment for the plaintiff was improper.

{¶ 10} In both cases, the injury to the plaintiff occurred on the premises owned or occupied by the defendant, and, in both cases, we cited the Restatement position but did not elevate it to syllabus law. Plaintiff now argues that a fair reading of these cases would support an inference that Restatement Section 344 is already the law of Ohio and placing it in syllabus form would merely be a clarification. However, the present case is factually at odds with the cited authorities. The Restatement, Holdshoe, and Howard all involve the liability of a defendant in actual possession and control of the property at issue. While Section 344 may accurately reflect the law of Ohio, it is inapplicable to this action because the area in which the attack on decedent occurred was not under the control of the defendant.

{¶ 11} It is fundamental that to have a duty to keep premises safe for others one must be in possession and control of the premises. *Wills v. Frank Hoover Supply* (1986), 26 Ohio St. 3d 186, 26 OBR 160, 497 N.E. 2d 1118. The test to be applied in determining control has been expressed as "the power and right to admit people to the premises and to exclude people from it, and involves a substantial

4

exercise of that right and power." *Id*. at 188, 20 OBR at 162, 497 N.E.2d at 1120. In the present case the area in which plaintiff's decedent was injured was not under the control of Big Bear. Falkenberg had left the store and entered a common area of the shopping center. This common area was expressly under the control of Graceland Shoppers Limited Partnership.

{¶ 12} Big Bear and Graceland have specifically addressed the issue of ownership and control of the common areas in the lease between the two parties. Under the lease, the common areas, including the sidewalks and parking areas, are for the joint use of all tenants, their customers, and their employees. This limited right is one of common use and not control. Article 31of the lease does allow Big Bear the right to display and sell merchandise on the sidewalk, but this right is subordinate to the rights of shopping center customers and again does not meet the criteria necessary to establish control. Article 9 also assigns responsibility for maintenance of common areas to Graceland and expressly includes security as a component of that maintenance.

{¶ 13} The element of control has its origins at common law. *McKinney v. Hartz & Restle Realtors, Inc*. (1987), 31 Ohio St.3d 244, 31 OBR 449, 510 N.E. 2d 386. This element has been continually reiterated in our decisions and is incorporated into the Restatement position. Holdshoe; Howard. Under similar circumstances we have also refused to extend a political subdivision's liability to areas outside its territorial limits, applying this same reasoning. See *Ruwe v. Bd. of Springfield Twp. Trustees* (1987), 29 Ohio St. 3d 59, 29 OBR 441, 505 N.E. 2d 957, *Mitchell v. Cleveland Elec. Illum Co*. (1987), 30 Ohio St. 3d 92, 30 OBR 295, 507 N.E. 352.

{¶ 14} Courts of other states, when addressing Section 344, have likewise held that control is a necessary predicate to liability. In *Craig v. A.A.R. Realty Corp.* (Del.Super.1989), 576 A. 2d 688, the Superior Court of Delaware, New Castle County, held that a lessee could be liable for injuries received by a mall

employee resulting from criminal activity if the lessee had the right of control under the terms of the lease and failed to take any preventive action.  The same rational was applied by the *Supreme Court of Iowa in Galloway v. Bankers Trust Co.* (Iowa 1988), 420 N.W. 2d 437, in assigning liability for criminal conduct at a shopping mall.  Courts have consistently required control as a predicate to liability because the possessor of land is in the best position to diminish the danger to invitees.

**{¶ 15}** Plaintiff argues that even in the absence of control the general duty of Big Bear to its invitee under Restatement Section 344 should be extended under a theory of foreseeability.  Plaintiff reasons that since Big Bear was on notice of criminal activity in an area near its store there logically arose a duty to protect invitees against or at least warn invitees of possible dangers of attack.

**{¶ 16}** Generally, under Ohio law, there is no duty to prevent a third person from causing harm to another absent a special relation between the parties.  *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St. 3d 86, 92, 529 N.E. 2d 449, 455.  In *Gelbman v. Second Natl. Bank of Warren* (1984), 9 Ohio St. 3d 77, 9 OBR 280, 458 N.E. 2d 1262, we addressed the special relation concept within the context of a business owner's duty to protect third parties.  Gelbman was involved in an automobile collision with a Burger King customer who was exiting the parking lot of the restaurant.  Gelbman sued the restaurant and the owner of the land upon which it was located under the theory that they had a duty to control their invitees.  The court, in concluding that no duty existed absent a special relationship between the parties, cited 2 Restatement of the Law 2d, Torts (1965) 116, 122, Sections 314 and 315, with approval.  Section 315 provides:

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

"(a)  a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

6

"(b) a special relation exists between the actor and the other which gives to the other a right to protection"

**{¶ 17}** Section 314 states:

"The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." See, also, *Hill v. Sonitrol of Southwestern Ohio, Inc*. (1988), 36 Ohio St. 3d 36, 521 N.E. 780.

**{¶ 18}** Thus, unless a special relationship existed between Big Bear and Falkenberg, imposed by statute or common law, no duty existed. Forseeability alone is insufficient to create liability. The special relationship that arose between Big Bear and Falkenberg was that of business owner and invitee. Big Bear owed a duty of care to Falkenberg while she was on Big Bear's premises. However, once she finished her business and left the supermarket that relationship no longer existed. Falkenberg then became an invitee of Graceland, the entity which retained possession and control over the areas in which the attack occurred.

**{¶ 19}** Foreseeability may still be determinative of liability, but the question is foreseeable to whom. When the burden is placed on the entity in control, allocation of responsibility is more clearly defined. If we were to rely on foreseeability alone there could conceivably be no limit to any mall business owner's liability. At what geographic point would Big Bear's liability end? What if Falkenberg had left Big Bear and then visited several other stores in the center? Would all businesses in the center be liable for the attack, or only those visited by plaintiff? Simply put, it is difficult to create a test that would not subject every store owner to liability.

**{¶ 20}** This is not a case in which the law should be extended to provide a remedy where none exists. Under the current standard each business owner is responsible for the area of its leasehold and the entire common area is the

responsibility of the entity in possession and control of the common area. Any extension of current law would only add confusion and unpredictability.

{¶ 21} We conclude that a business owner has a duty to warn or protect its business invitees from criminal acts of third parties when the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner. The duty does not extend to premises not in the possession and control of the business owner.

{¶ 22} Accordingly, we affirm the court of appeals.

*Judgment affirmed.*

WRIGHT, PFEIFER And COOK, JJ., concur.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., dissent.

_____

**ALICE ROBIE RESNICK, J., dissenting**.

{¶ 23} Because I disagree with both the conclusions that 2 Restatement of the Law 2d, Torts (1965), Section 344, is inapplicable to the instant action and that Big Bear owed no duty to protect Mrs. Falkenberg from the vicious attack she suffered, I respectfully dissent from the majority's opinion.

{¶ 24} As set forth in the majority lead opinion, Section 344 imposes liability on business possessors of land for the physical harm inflicted by third parties on business invitees when the possessor fails to "exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it." I believe, as appellant asserts, that a fair reading of *Holdshoe v. Whinery* (1968), 14 Ohio St.2d 134, 43 O.O.2d 240, 273 N.E.2d 127, and *Howard v. Rogers* (1969), 19 Ohio St.2d 42, 48 O.O.2d 52, 249 N.E.2d 804, reveals that Section 344 accurately reflects the law of Ohio. To conclude otherwise would be to torture the obvious import of those decisions. Therefore, I would adopt Section 344 in its entirety and elevate it to syllabus law.

**{¶ 25}** I agree with the majority's determination that Section 344 and previous decisions of this court indicate that one must be in possession and control of the premises in order to have a duty to keep the premises safe. *Wills v. Frank Hoover Supply* (1986), 26 Ohio St.3d 186, 26 OBR 160, 497 N.E.2d 1118. The lower courts, in granting summary judgment in favor of Big Bear, concluded as a matter of law that Big Bear did not "occupy or control" the sidewalk on the west side of the store where Falkenberg was attacked. I believe that this conclusion was premature, and that the determination of whether Big Bear had exercised possessory rights over the sidewalk was a question for the trier of fact to resolve.

**{¶ 26}** Construing the evidence most strongly in favor of appellant, in accordance with Civ. R. 56, I conclude that reasonable minds could differ on the issue of whether Big Bear had assumed some control over the sidewalk surrounding its store. The sidewalk on the west side of the building is routinely used by patrons of Big Bear both to enter and to exit the store. There are several parking spaces immediately contiguous to the west side of the store that are frequently used by Big Bear customers in general, and senior citizen customers in particular. Big Bear's baggers deliver groceries to the west parking area by using the sidewalk where the instant attack occurred. Further, Big Bear, under the terms of the lease, is permitted to exercise dominion over the sidewalk surrounding the store for use in sidewalk sales. Based upon the foregoing, I believe that the record indicates that the issue of who controlled the premises on which Falkenberg was attacked should have been submitted to the trier of fact for consideration.

**{¶ 27}** In addition to the question of control, this case raises the issue of whether Big Bear owed a duty to Falkenberg to protect her from the criminal attack she suffered. The duty imposed upon a business owner to protect business invitees from the criminal acts of third parties has been defined in several contexts. In Howard, this court determined that "[w]here an occupier of premises for business purposes does not, and could not in the exercise of ordinary care, know of a danger

which causes injury to his business invitee, he is not liable therefore."  19 Ohio St.2d 42, 48 O.O.2d 52, 249 N.E.2d 804, paragraph three of the syllabus.

{¶ 28} Comment f to Section 344 states:  "Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur.  He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual.          ***"

{¶ 29} Furthermore, our decision in *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co*. (1989), 45 Ohio St.3d 171, 543 N.E.2d 769, provides additional insight into liability for third-party criminal acts.  In holding a construction company responsible for vandalism which occurred on a construction site, due to the company's knowledge of such activities, this court stated:

"If a person exercises control over real or personal property and such person is aware that the property is subject to repeated third-party vandalism, causing injury to or affecting parties off the controller's premises, then a special duty may arise, to those parties whose injuries are reasonably foreseeable, to take adequate measures under the circumstances to prevent future vandalism."  Id. at syllabus.

{¶ 30} The record in the case sub judice indicates that at least nine prior purse-snatchings had occurred at Graceland in the four-year period leading up to the attack on Falkenberg.  Five of these incidents occurred at the precise location where Falkenberg was attacked.  Of those five attacks, four occurred within a six-month period during the same year in which Falkenberg was attacked -- 1991.  Two of these attacks occurred within one week of the attack on Falkenberg.  Finally, at least three of the five attacks which occurred on the west side of the Big Bear store were reported to Big Bear prior to the attack on Falkenberg.

**{¶ 31}** Based on the history of reported criminal activity, Big Bear clearly had knowledge of the fact that patrons who used the parking lot and the sidewalk on the west side of the store were at risk of being attacked. Yet Big Bear chose to take no action to protect its business invitees from the criminal activity it knew had occurred and could foreseeably occur again. The store failed to pursue even simple safety measures such as posting warning signs or employing security personnel. Nor did the store notify Graceland that these attacks had occurred. By choosing to do nothing, Big Bear ignored its obligation as a business proprietor to protect its business invitees from the foreseeable criminal acts of third parties.

**{¶ 32}** For all of the foregoing reasons, I would adopt Section 344 of the Restatement in its entirety, reverse the judgment of the court of appeals, and remand this cause to the trial court for further proceedings.

DOUGLAS and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.

_____