SADLER, J.
 

 {¶ 1} Plaintiff-appellant, Kathryn R. Payne, appeals from the judgment entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Ohio Performance Academy, Inc. ("OPA"), VV Venue, LLC ("VV Venue"), and Vaud-Villities Productions, Inc. ("VVP"). For the following reasons, we affirm the decision of the trial court.
 

 I. FACTS AND PROCEDURAL HISTORY
 

 {¶ 2} Unless otherwise noted, the following facts are undisputed. VV Venue owns the real estate and facility at 4411 Tamarack Boulevard in Columbus, Ohio that houses the Northland Performing Arts Center ("NPAC"). The NPAC building includes the Black Box Theater. OPA holds a long-term lease with VV Venue and rents the space out for performances and other events.
 

 {¶ 3} Pertinent to this appeal, on March 12, 2014, OPA entered into a rental agreement with the Columbus Dance Theater ("CDT") for a one-time performance. According to the rental agreement between OPA and CDT, CDT director Tim Veach rented the Black Box Theater, green room, and lobby from OPA for a performance to occur on April 12, 2014. OPA designated itself as "landlord" within the agreement, and Scott Jones, an independent contractor hired by OPA to handle rentals at the NPAC facility, signed on OPA's behalf. (Rental Agreement at 6.) VV Venue and VVP were not parties to the rental agreement. The rental term included the performance day and the day prior to the event, Friday, April 11, 2014, for rehearsal and room set-up. Under the terms of the agreement, CDT was permitted to occupy and make reasonable use of the premises for the purpose of the event and such systems and equipment identified in the agreement. The "[s]ystems" identified in the agreement are:
 

 • Standard Stage Layout (No Runway), Standard Sound and Lights, Wireless microphones
 

 • Standard Seating on risers
 

 • (21) 60? Rnd. 8 Top Tables with white full length table cloth
 

 • CD Play, Projectors/Screens
 

 • Kitchen access for caterer
 

 • Sound and lighting engineers for event
 

 • Black Box Theater lights adjusted for banquet seating by NPAC
 

 • Tiktz.com
 

 (Rental Agreement at 1.)
 

 {¶ 4} The rental agreement states that CDT was subject to all OPA policies applicable to use of the premises and was obligated to comply with all reasonable requests by OPA's staff and personnel. OPA was responsible for utilities and alcohol sales for the event. The agreement further indicates that CDT inspected the premises, fixtures, and any systems it will use, and acknowledges that they are in a reasonable and acceptable condition for CDT's intended use. CDT agreed, under a "disclaimer, limitation of liability and indemnification" clause, that:
 

 [T]he Premises and use of any systems or Services provided hereunder are provided on an "AS IS, WHERE IS" basis, and that Landlord, its officers, employees, agents, successors and assigns make no warranty or representation as to their condition or suitability for Renter's purpose(s) and shall have no liability whatsoever for any damage or injury to Renter, its guests or invitees, that may arise directly or indirectly under this Agreement or from the use of the Premise and any systems or Services provided hereunder. Further, except where specifically provided otherwise in this agreement, landlord has no obligation and is not responsible to provide any labor, services, systems, equipment or property for any purpose (for setup, teardown, use of systems and equipment, or otherwise) and shall bear no responsibility whatsoever for any services, systems, equipment or property volunteered for the benefit of Renter.
 

 (Emphasis sic.) (Rental Agreement at 4.)
 

 {¶ 5} On April 11, 2014, set-up and rehearsal day, OPA provided an elevated
 modular stage comprised of panels sitting on frames, along with movable stairs two-to-three steps high, a mid-stage curtain, and a curtain behind the stage that covers the back wall. With this set up, when the general and work lights are off, the backstage area behind the mid-stage curtain is completely dark.
 

 {¶ 6} Jones and Veach were present for rehearsal. According to Veach, when he arrived for rehearsal he noticed that no "[g]low [t]ape," tape that glows in the dark, was placed on the edge of the backstage, so he requested glow tape from someone who he believed to be a part of OPA's crew. (Veach Dep. at 22.) Veach agreed that he assumed glow tape was then put down when he saw people move. However, the parties do not dispute that glow tape was not applied along the edge of the stage.
 

 {¶ 7} Appellant, who CDT had hired as the featured performer as an independent contractor, arrived for rehearsal, walked up onto the stage by using a few steps, and sat at a piano situated at the front of the stage. For the first 30 to 45 minutes, appellant worked with the sound engineer, a time in which the curtain to backstage was open. At one point during the rehearsal, the curtain was closed and Veach instructed appellant to go backstage in order to practice her entrance from behind the curtain. Appellant moved from her piano, which was still in the light, through the curtain to backstage, which was "[t]otally dark"-she could not see anything-intending to wait there until her name was called. (Payne Dep. at 51.) According to appellant, this was the first time she had been behind the curtain, but she was not surprised that it was dark backstage based on her prior general experience in theater. After a few steps behind the curtain, appellant states she did not see glow tape and therefore assumed she was safe, so she turned to face stage front. While doing so, her right foot went to the side and off the edge of the stage, and appellant fell the down stairs sustaining injuries.
 

 {¶ 8} On May 1, 2015, appellant filed a complaint against appellees and CDT alleging causes of action of premises liability and respondeat superior. On June 2, 2015, CDT answered and filed a cross-claim against appellees for indemnity and contribution, and several days later, appellees answered and filed a cross-claim for breach of contract, indemnification, and contribution against CDT.
 

 {¶ 9} On February 5, 2016, appellees filed a motion for summary judgment as to the claims raised by appellant based on darkness as an open and obvious hazard and the "step-in-the-dark" rule, and a motion for summary judgment as to CDT's cross-claim. (Mot. For Summ. Jgmt. at 8.) Appellant filed a memorandum contra on February 24, 2017 asserting that defendants, including OPA, owed her a duty of care as a business invitee and failed to maintain their facility in a safe manner by failing to place glow tape in a dangerous area, that OPA was responsible for the stage layout which includes placement of glow tape as an industry standard, the condition was not open and obvious, and that, as a seasoned performer, appellant's step into the dark was reasonable given that she saw no glow tape defining an edge. Appellant additionally asserted that the rental agreement is unconscionable to the extent it bars a claim for OPA's failure to place glow tape. On March 2, 2016, appellees replied reasserting that it owed no duty to appellant because darkness is an open and obvious condition, the rental agreement did not require OPA to apply glow tape, and the rental agreement was not unconscionable. CDT likewise filed a motion for summary judgment as to appellant's claims.
 

 {¶ 10} On January 9, 2017, the trial court issued a decision granting appellees'
 

 motions for summary judgment as to appellant's claims and as to CDT's cross-claim, and denying CDT's motion for summary judgment as to appellant's claims. Regarding OPA, the trial court stated that a lease agreement transfers both possession and control of the premises to the tenant absent a contrary agreement and disagreed with appellant's argument that OPA had a duty, pursuant to the rental agreement, to mark the stage boundaries with glow tape. The trial court did not address the open and obvious or step-in-the-dark rule in relation to OPA.
 
 [1]
 
 The trial court notes that the rental agreement did not require OPA to install glow tape but "merely provides that OPA shall provide [ ]Standard Stage Layout (No Runway), Standard Sound and Lights, Wireless Microphones," and that OPA leased the space in an "AS IS, WHERE IS" condition. (Emphasis sic.) (Trial Ct. Decision at 7.) The trial court concluded that appellant failed to provide evidence to create a genuine issue of material fact. Regarding VV Venue, the trial court found that the lease agreement between VV Venue and OPA divested VV Venue of possession and control of the premises and that VV Venue did not otherwise occupy, manage, or control the NPAC Black Box Theater at the time of the incident. Thus, the trial court found that VV Venue neither owed or breached a duty to appellant. Regarding VVP, the trial court likewise found that VVP was not exercising any of its rights under its sub-lease and otherwise had no involvement in the occurrence leading to appellant's injury. However, in regard to CDT, the trial court found that genuine issues of material fact exist concerning whether CDT breached a duty owed to appellant when its agent (Veach) directed appellant to step in the dark and "whether a reasonable person in [appellant's] position would have no reason to expect danger or would have reason to not expect it." (Trial Ct. Decision at 9.) Thus, the court found summary judgment in favor of appellees appropriate but denied summary judgment in favor of CDT.
 

 {¶ 11} Thereafter, on February 7, 2017, appellant filed a notice dismissing CDT as a defendant pursuant to Civ.R. 41(A). On the same day, appellant filed an appeal to this court. On February 14, 2017, appellees filed a notice dismissing its cross-claim against CDT, and CDT filed a notice dismissing its cross-claim against appellees. On February 16, 2017, the trial court filed an order stating that CDT's notice of dismissal terminated the case.
 
 [2]
 

 II. ASSIGNMENTS OF ERROR
 

 {¶ 12} Appellant presents two assignments of error:
 

 [1.] THE TRIAL [COURT] ERRED IN GRANTING SUMMARY JUDGMENT BY FINDING OHIO PERFORMANCE ACADEMY, INC. WAS NOT REQUIRED UNDER THE RENTAL AGREEMENT TO PLACE GLOW TAPE AND INSTEAD, LEASED THE PREMISES "AS IS, WHERE IS."
 

 [2.] THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF VV VENUE, LLC BY FINDING IT OWED NOT [sic] DUTY TO APPELLANT.
 

 III. STANDARD OF REVIEW
 

 {¶ 13} Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party.
 
 Harless v. Willis Day WarehousingCo
 
 .,
 
 54 Ohio St.2d 64
 
 , 66,
 
 375 N.E.2d 46
 
 (1978). "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims."
 
 Lundeen v. Graff
 
 , 10th Dist.,
 
 2015-Ohio-4462
 
 ,
 
 46 N.E.3d 236
 
 , ¶ 11, citing
 
 Dresher v. Burt
 
 ,
 
 75 Ohio St.3d 280
 
 , 293,
 
 662 N.E.2d 264
 
 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial.
 
 Dresher
 
 at 293,
 
 662 N.E.2d 264
 
 . The nonmoving party may not rest on the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists.
 
 Henkle v. Henkle
 
 ,
 
 75 Ohio App.3d 732
 
 , 735,
 
 600 N.E.2d 791
 
 (12th Dist.1991).
 

 {¶ 14} Appellate review of summary judgment is de novo.
 
 Gabriel v. Ohio State Univ. Med. Ctr.
 
 , 10th Dist. No. 14AP-870,
 
 2015-Ohio-2661
 
 ,
 
 2015 WL 3963953
 
 , ¶ 12, citing
 
 Byrd v. Arbors E. Subacute & Rehab. Ctr.
 
 , 10th Dist. No. 14AP-232,
 
 2014-Ohio-3935
 
 ,
 
 2014 WL 4459120
 
 , ¶ 5. "When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination."
 
 Gabriel
 
 at ¶ 12, citing
 
 Byrd
 
 at ¶ 5, citing
 
 Maust v. Bank One Columbus, N.A.
 
 ,
 
 83 Ohio App.3d 103
 
 , 107,
 
 614 N.E.2d 765
 
 (10th Dist.1992). "We must affirm the trial court's judgment if any of the grounds raised by the movant in the trial court are found to support it, even if the trial court failed to consider those grounds."
 
 Gabriel
 
 at ¶ 12, citing
 
 Helfrich v. Allstate Ins. Co.
 
 , 10th Dist. No. 12AP-559,
 
 2013-Ohio-4335
 
 ,
 
 2013 WL 5450931
 
 , ¶ 7, citing
 
 Coventry Twp. v. Ecker
 
 ,
 
 101 Ohio App.3d 38
 
 , 41-42,
 
 654 N.E.2d 1327
 
 (9th Dist.1995).
 

 IV. DISCUSSION
 

 A. First Assignment of Error
 

 {¶ 15} Under the first assignment of error, appellant contends the trial court erred in determining that OPA was not required to place the glow tape and leased the premises "[a]s is, [w]here is." (Appellant's Brief at 12.) We find appellant's assignment of error lacks merit.
 

 {¶ 16} Appellant first argues that an issue of fact remains as to whether placement of the glow tape was the responsibility of OPA as a part of the "standard stage
 layout" provision of the rental agreement and by way of Veach asking for the tape to be placed. Appellees counter that the rental agreement passed possession or control of the NPAC space at the time the incident occurred to CDT, and, with no evidence of a contrary agreement, OPA neither owed nor breached a duty to appellant. OPA states that the rental agreement did not contain a provision requiring glow tape and did contain an "as is, where is" provision and notes that no testimony to an industry standard came from an expert witness. Furthermore, appellees argue that even if there is an issue of fact as to whether appellant is an invitee as to OPA (rather than CDT), OPA still owes her no duty by virtue of the open-and-obvious doctrine.
 

 {¶ 17} To prevail on her claim of premises liability, appellant was required to prove (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting from the breach.
 
 Beair v. KFC Natl. Mgt. Co.
 
 , 10th Dist. No. 03AP-487,
 
 2004-Ohio-1410
 
 ,
 
 2004 WL 557351
 
 , ¶ 8 ;
 
 Menifee v. Ohio Welding Prods., Inc.
 
 ,
 
 15 Ohio St.3d 75
 
 , 77,
 
 472 N.E.2d 707
 
 (1984). " 'If the party moving for summary judgment in a negligence action can point to evidence illustrating that the nonmoving party will be unable to prove any one of these elements, then the movant is entitled to judgment as a matter of law.' "
 
 Chilton-Clark v. Fishel
 
 , 10th Dist. No. 16AP-76,
 
 2016-Ohio-7135
 
 ,
 
 2016 WL 5639615
 
 , ¶ 11, quoting
 
 Second Natl. Bank of Warren v. Demshar
 
 ,
 
 124 Ohio App.3d 645
 
 , 648,
 
 707 N.E.2d 30
 
 (11th Dist.1997).
 

 {¶ 18} "The existence of a duty is a question of law for a court to decide, even if resolving that question requires the court to consider the facts or evidence."
 
 Martin v. Lambert
 
 , 4th Dist.,
 
 2014-Ohio-715
 
 ,
 
 8 N.E.3d 1024
 
 , ¶ 17. As stated by
 
 Martin
 
 at ¶ 18 :
 

 In a premises liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed.
 
 E.g.
 
 ,
 
 Gladon v. Greater Cleveland Regional Transit Auth.
 
 ,
 
 75 Ohio St.3d 312
 
 , 315,
 
 1996-Ohio-137
 
 ,
 
 662 N.E.2d 287
 
 (1996) ;
 
 Shump v. First Continental-Robinwood Assocs.
 
 ,
 
 71 Ohio St.3d 414
 
 , 417,
 
 1994-Ohio-27
 
 ,
 
 644 N.E.2d 291
 
 (1994). A business premises owner or occupier owes its invitees a duty to exercise ordinary care to maintain its premises in a reasonably safe condition and to warn invitees of known latent or hidden dangers.
 
 E.g.
 
 ,
 
 Armstrong
 
 [
 
 v. Best Buy Co.
 
 ,
 
 99 Ohio St.3d 79
 
 ,
 
 2003-Ohio-2573
 
 ,
 
 788 N.E.2d 1088
 
 ] at ¶ 5 ;
 
 Paschal v. Rite Aid Pharmacy, Inc.
 
 ,
 
 18 Ohio St.3d 203
 
 , 203,
 
 18 Ohio B. 267
 
 ,
 
 480 N.E.2d 474
 
 (1985) ;
 
 Ray v. Wal-Mart Stores, Inc.
 
 , --- Ohio App.3d ----,
 
 2013-Ohio-2684
 
 ,
 
 993 N.E.2d 808
 
 (4th Dist.), ¶ 18. However, this "duty does not extend to premises not in the possession and control of the business owner."
 
 Simpson v. Big Bear Stores Co.
 
 ,
 
 73 Ohio St.3d 130
 
 , 135,
 
 1995-Ohio-203
 
 ,
 
 652 N.E.2d 702
 
 (1995).
 

 {¶ 19} Under the common law of premises liability, when a property is leased, as a general rule, the possessor and occupier rather than the landlord or landowner owes the applicable legal duty to an entrant.
 
 Id.
 
 at ¶ 21, 33 ;
 
 Shump v. First Continental-Robinwood Assocs.
 
 ,
 
 71 Ohio St.3d 414
 
 , 417,
 
 644 N.E.2d 291
 
 (1994). Whether a duty to an entrant to the premises nevertheless survives the lease remains " 'coextensive with the control retained' " by the landlord.
 
 Martin
 
 at ¶ 23, quoting
 
 Beaney v. Carlson
 
 ,
 
 174 Ohio St. 409
 
 , 412,
 
 189 N.E.2d 880
 
 (1963), quoting 32 American Jurisprudence, Section 768, at 654.
 

 {¶ 20} To determine whether a business owner had possession and control of the premises, "[t]he test to be applied * * * has been expressed as 'the power and right to admit people to the premises and to exclude people from it, and involves a substantial exercise of that right and power.' "
 
 Simpson v. Big Bear Stores Co.
 
 ,
 
 73 Ohio St.3d 130
 
 , 132,
 
 652 N.E.2d 702
 
 (1995), quoting
 
 Wills v. Frank Hoover Supply
 
 ,
 
 26 Ohio St.3d 186
 
 , 188,
 
 497 N.E.2d 1118
 
 (1986) ;
 
 Martin
 
 at ¶ 32 (finding landowner owed no duty to injured third party where evidence did not show that landowner "actually or substantially exercised control over [the lessee's] business operation or business premises"). Possession and control in the premises liability context means more than retaining authority over " 'routine and common acts * * * [such as having the authority to approve or disapprove any structural changes, being responsible for making repairs, and having the power to evict the tenant].' "
 
 Id.
 
 at ¶ 24, quoting
 
 Richeson v. Leist
 
 , 12th Dist. No. CA2006-11-138,
 
 2007-Ohio-3610
 
 ,
 
 2007 WL 2028934
 
 , ¶ 15.
 
 See also
 

 Doe v. Cub Foods
 
 ,
 
 115 Ohio App.3d 473
 
 , 476,
 
 685 N.E.2d 806
 
 (10th Dist.1996) ("[O]ne, not in possession and control of a premises, could nevertheless assume a duty with regard to that property."). "[A] commercial landlord will not be liable for injuries a third person sustains on the tenant's premises if the landlord is 'in no way linked with management or direction of the affairs being conducted on such premises.' "
 
 Martin
 
 at ¶ 23, quoting
 
 Kauffman v. First Cent. Trust Co.
 
 ,
 
 151 Ohio St. 298
 
 , 305,
 
 85 N.E.2d 796
 
 (1949).
 

 {¶ 21} The language of the lease is instructive in determining whether a landlord retained possession and control of the premises or otherwise assume a duty.
 
 Krause v. Spartan Stores, Inc.
 
 ,
 
 158 Ohio App.3d 304
 
 ,
 
 2004-Ohio-4365
 
 ,
 
 815 N.E.2d 696
 
 , ¶ 12, (6th Dist.) ;
 
 Cub Foods.
 
 The lease is a contract between the parties.
 

 Id.
 

 "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement."
 
 Westfield Ins. Co. v. Galatis
 
 ,
 
 100 Ohio St.3d 216
 
 ,
 
 2003-Ohio-5849
 
 ,
 
 797 N.E.2d 1256
 
 , ¶ 11. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.
 

 Id.
 

 "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning."
 

 Id.
 

 ;
 
 Sunoco, Inc. (R&M) v. Toledo Edison Co.
 
 ,
 
 129 Ohio St.3d 397
 
 ,
 
 2011-Ohio-2720
 
 ,
 
 953 N.E.2d 285
 
 . Conversely, when a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent.
 
 Galatis
 
 at ¶ 12 ;
 
 Thomas v. Am. Elec. Power Co.
 
 , 10th Dist. No. 03AP-1192,
 
 2005-Ohio-1958
 
 ,
 
 2005 WL 977057
 
 , ¶ 39.
 

 {¶ 22} Here, per the rental agreement, OPA permitted CDT to "occupy" and make "reasonable use" of the specified premises, systems, and equipment for the term of the rental. (Rental Agreement at 3.) OPA remained involved at the premises by providing a "[s]tandard [s]tage [l]ayout" among other listed items. (Rental Agreement at 1.) Appellant contends that OPA's duty to her arises from the "[s]tandard [s]tage [l]ayout" provision of the rental agreement, which she believes encompasses the responsibility to place glow tape. At a minimum, appellant argues that issues of material fact remain on this point.
 

 {¶ 23} Even if disputes remain as to who bore the responsibly to place the glow tape, appellant has not explained how retaining a responsibility to place glow tape establishes possession and control under the test set forth in
 
 Simpson
 
 , which requires the landlord to retain the power and right to admit and exclude people from the premises and an actual, substantial exercise
 of that power. Even so, nothing in the record shows " 'a substantial exercise' " of the right and power to admit and exclude people from the premises by OPA as required by
 
 Simpson.
 

 Id.
 
 at 132,
 
 652 N.E.2d 702
 
 , quoting,
 
 Wills
 
 at 188,
 
 497 N.E.2d 1118
 
 . Without record evidence of OPA making a substantial exercise of that right, summary judgment in favor of OPA is appropriate due to a lack of duty to appellant.
 
 Krause
 
 (holding that, even if a question of fact exists about whether a landlord retained the right to admit or exclude persons from the premises, summary judgment in favor of the landlord was appropriate where no record evidence existed that the landlord ever actually exercised a right to admit or exclude persons from the premises).
 

 {¶ 24} Appellant does not argue any other provision of the rental agreement creates a material issue of fact on whether OPA retained control over the premises. Moreover, appellant has not argued assumption of duty as a basis for reversal or otherwise cited
 
 Doe
 
 or other legal authority to support such an argument. We decline to do so on appellant's behalf. Considering all the above, appellant has not met her burden to affirmatively demonstrate error on appeal.
 
 Watkins v. Holderman
 
 , 10th Dist. No. 11AP-491,
 
 2012-Ohio-1707
 
 ,
 
 2012 WL 1344017
 
 , ¶ 11 ;
 
 see also
 
 App.R. 16(A).
 

 {¶ 25} We note that both parties make arguments about the limited liability, indemnity, and "AS IS, WHERE IS" terms in the rental agreement, and appellant argues that to the extent those terms bar her claim against OPA, the rental agreement is unconscionable. (Emphasis sic.) (Rental Agreement at 4.) However, because our decision is not based on those clauses, both parties' arguments to those points are moot.
 

 {¶ 26} Considering all the above, we find appellant's assignment of error lacks merit, and summary judgment in favor of OPA is appropriate. As a result, we need not address appellees' alternative argument regarding the open-and-obvious doctrine and the "step-in-the-dark" rule in the first instance.
 

 {¶ 27} Accordingly, appellant's first assignment of error is overruled.
 

 B. Second Assignment of Error
 

 {¶ 28} Under the second assignment of error, appellant contends that issues of fact remain as to whether VV Venue can be held liable for appellant's fall, since VV Venue was responsible for the maintenance of the building, and no agreement absolved it from liability. We disagree.
 

 {¶ 29} As provided above, as a general rule, a lease transfers possession and control of the premises.
 
 Martin
 
 at ¶ 21, 33. A landowner who leases a premise may remain liable to an entrant if the landlord retains possession and control of the premises.
 

 Id.
 

 The test to determine whether possession and control is retained by a landowner is whether the landowner had " 'the power and right to admit people to the premises and to exclude people from it,' " and the record shows " 'a substantial exercise' " of that right and power.
 
 Simpson
 
 at 132,
 
 652 N.E.2d 702
 
 , quoting
 
 Wills
 
 at 188,
 
 497 N.E.2d 1118
 
 . Retaining authority over routine and common acts such as making repairs and having the power to evict the tenant are insufficient to establish possession and control for the purposes of premise liability.
 
 Martin
 
 at ¶ 24.
 

 {¶ 30} Here, it is undisputed that VV Venue leased the area where the injury occurred to OPA, was not a party to the rental agreement to CDT, and had nothing to do with stage set up or management of
 the Black Box Theater. Appellees supported its motion for summary judgment with Payne's deposition, an affidavit of the sole member of VV Venue, and the rental agreement. We find that at the time of appellant's injury, VV Venue had neither possession nor control of the premises under premises liability law. Therefore, VV Venue owed no duty to appellant as a matter of law, and summary judgment in VV Venue's favor was appropriate.
 

 {¶ 31} Accordingly, appellant's second assignment of error is overruled.
 

 V. CONCLUSION
 

 {¶ 32} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
 

 Judgment affirmed.
 

 KLATT, J., concurs.
 

 BRUNNER, J., dissents.
 

 We note the unusual procedural history whereby the trial court did not address the grounds originally raised by appellees in their motion for summary judgment. However, the parties briefed the issue of OPA's duty to place glow tape, and neither party has challenged the trial court's decision regarding OPA's duty on procedural grounds.
 

 The trial court's January 9, 2017 summary judgment decision became a final, appealable order on appellant's dismissal of CDT as a defendant under Civ.R. 41(A)(1)(a).
 
 Six v. Gahanna Trailer Servs.
 
 , 10th Dist. No. 16AP-91,
 
 2007-Ohio-7131
 
 ,
 
 2017 WL 3394187
 
 , ¶ 11, fn. 1 (determining trial court's decision granting summary judgment for one of several defendants in a civil action became a final, appealable order when the plaintiff voluntarily dismissed the remaining parties to the suit pursuant to Civ.R. 41(A)(1) and noting the associated cross-claim was rendered moot);
 
 Boyland v. Giant Eagle
 
 , 10th Dist. No. 17AP-133,
 
 2017-Ohio-7335
 
 ,
 
 2017 WL 3635584
 
 ;
 
 Denham v. New Carlisle
 
 ,
 
 86 Ohio St.3d 594
 
 , 597,
 
 716 N.E.2d 184
 
 (1999) ;
 
 Pattison v. W.W. Grainger, Inc.
 
 ,
 
 120 Ohio St.3d 142
 
 ,
 
 2008-Ohio-5276
 
 ,
 
 897 N.E.2d 126
 
 , ¶ 14-20. "[V]oluntary dismissal pursuant to Civ.R. 41(A) renders the parties as if no suit had ever been filed against only the dismissed parties."
 
 Boyland
 
 at ¶ 7.